IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–00328–KMT

CHARLES M. LYONS,

      Plaintiff,

v.

SOUTHWEST MEMORIAL HOSPITAL,

      Defendant.

---

## ORDER

---

      This matter is before the court on "Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 12, filed May 3, 2013) and "Plaintiff's Motion for Leave to Amend Original Complaint" (Doc. No. 42, filed Oct. 7, 2013).  The court also considers herein, "Plaintiff's Motion to Compel" (Doc. No. 48, filed Feb. 13, 2014), "Plaintiff's Motion for Extension of Time" (Doc. No. 50, filed Feb. 24, 2014), and Plaintiff's "Second Request Motion to Request the Court to Appoint Pro Se Plaintiff Legal Counsel Respresentation [sic] According to the Pilot Program, Pro Bono Panel" (Doc. No. 51, filed Feb. 25, 2014).

      For the following reasons, Defendant's Motion to Dismiss is GRANTED, Plaintiff's Motion to Amend the Complaint is DENIED, and the remaining pending motions are denied as moot.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Title VII Complaint (Doc. No. 1, filed Feb. 6, 2013 [Compl.]) and the parties' briefing on the motions pending before the court.  Plaintiff worked as a paramedic for Defendant Southwest Memorial Hospital (at times, "SWMH") from on March 1, 2011 until he was terminated on February 15, 2012.  (Compl. at 3-4.)

On or about September 3, 2011, Plaintiff was escorted to the SWMH emergency room by the Montezuma County Sheriff's Department because he had suffered an emotional breakdown related to his psychological disorder, Post-Traumatic Stress Disorder (PTSD), and had indicated to a Sheriff's Department Officer that he intended to "harm himself."  (*Id.* at 5.)  Plaintiff was examined by a medical doctor and mental health professional.  (*Id.*)  Plaintiff informed the doctor and the mental health professional that he had PTSD and that he had been assaulted while on duty with SWMH at least three times in the previous month.  (*Id.*)

Plaintiff was immediately removed from the work schedule.  (*Id.*)  He returned to SWMH on October 3, 2011, for the sole purpose of completing paperwork to take leave under the Family and Medical Leave Act (FMLA).  (*Id.*)

Plaintiff returned from FMLA leave on October 18, 2011.  (*Id.*)  Plaintiff met with SWMH's Human Resources Director, Jim Bob Wynes,[1] and Director of Emergency Services, Becky Oliver, to discuss his ability to return to work.  (*Id.*)  Plaintiff advised Mr. Wynes and Ms. Oliver that he had PTSD and was attending on-going weekly meetings.  (*Id.*)  Ms. Oliver advised Plaintiff's supervisor, Matt Lindsay, to accommodate Plaintiff's weekly appointments as needed.

---

[1] Plaintiff has spelled this individual's surname as both "Wynes" and "Wayens."  (Compl. at 3, 5.) Although the court is unclear as to the correct spelling, it will use "Wynes" for clarity.

2

(*Id.*)

On December 1, 2011, Plaintiff was on an ambulance call with two Emergency Medical Technicians (EMTs), Wendy Bryan and Amy Linman.[2]  (*Id.* at 3.)  During the call, Ms. Bryan and Ms. Linman allegedly contaminated a needle and "IV product" and attempted to conceal this information from Plaintiff.  (*Id.*)  Upon their return to the SWMH emergency room, Ms. Bryan admitted the contamination to Plaintiff.  (*Id.*)  Plaintiff directed Ms. Bryan to report the incident to the on-duty registered nurse or to the EMTs' supervisor.  (*Id.*)

Plaintiff subsequently contacted Ms. Oliver and Liz Sellers, SWMH's Director of Clinical Services, regarding the contamination incident.  (*Id.*)  Ms. Oliver and Ms. Sellers informed Plaintiff that the incident was "none of his business and it was already handled."  (*Id.*)

On December 16, 2011, Plaintiff and his wife met with Mr. Wynes to discuss the contamination incident, as well as another issue involving an EMT practicing outside of the scope of his practice.  (*Id.*)  Mr. Wynes advised Plaintiff that "Becky [Oliver] will handle it" and ended the conversation.  (*Id.*)

Plaintiff maintains that Defendant continued to ignore his repeated attempts to uncover the alleged negligence of the three EMTs, Ms. Bryan, Ms. Linman, and the unnamed EMT discussed above.  (*Id.*)  Plaintiff alleges that Defendant's disregard of his concerns over the contamination incident exacerbated his PTSD.  (*Id.*)

---

[2] Plaintiff's Complaint refers to the EMTs only as "W. Bryant" and "A. Lindman."  (Compl. at 3.)  However, Plaintiff's proposed Amended Complaint gives the EMTs full names as "Wendy Bryan" and "Amy Linman."  (Doc. No. 44 at 3 [Proposed Am. Compl.].)  Although the proper spelling of these individual's surnames remains unclear, the court elects to use the full-names included in Plaintiff's proposed Amended Complaint.

3

On January 9, 2012, Plaintiff received an "unblemished" report of his work from Ms. Oliver. (*Id.*) On or about February 7, 2012, Plaintiff delivered a patient's insulin without notifying his Physician Advisor, Dr. Marc Turpin. (*Id.*) Plaintiff maintains that it is standard protocol for a Nationally Registered Paramedic (NREMT-P), like himself, to deliver a patient's insulin. (*Id.* at 3-4.) Nevertheless, Plaintiff was placed on administrative leave pending an investigation into this incident. (*Id.* at 4.)

After the investigation was completed, Plaintiff's supervisor, Mr. Lindsay, issued a formal report recommending that Plaintiff be given six months' probation and a reassignment of work hours. (*Id.*) However, on or about February 15, 2012, Plaintiff was terminated from his position based on the recommendations of Ms. Oliver and Ms. Sellers. (*Id.*) Plaintiff received a termination letter Plaintiff from Defendant stating that the basis for the termination was because Plaintiff had practiced outside of the scope of his practice by delivering insulin without notifying his Physician Advisor. (*Id.*)

Plaintiff was given less than five days to appeal his termination. (*Id.*) SWMH's CEO, Kent Hedwig, denied Plaintiff's appeal based on the fact that Plaintiff had admitted to the infraction. (*Id.*)

On March 5, 2012, Plaintiff completed an EEOC intake questionnaire form and sent it to the EEOC. (Resp. Mot. Am., Doc. No. 45, Ex. A.) On April 24, 2012, Plaintiff filed a charge of discrimination with the EEOC, alleging retaliation for reporting sex-based discrimination. (*Id.,* Ex. B.)

Plaintiff alleges that the EEOC investigation of his complaint revealed that Defendant had

not disciplined Ms. Bryan and Ms. Linman, the two EMTs involved in the contamination incident, until after Plaintiff was terminated.  (Compl. at 4.)  Defendant allegedly[3] maintained to the EEOC that Ms. Bryan and Ms. Linman had not been disciplined because it was not previously aware of the contamination incident.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 6, 2013.  Plaintiff's Complaint asserts that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.,* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, by terminating him.

Defendant's Motion to Dismiss was filed on May 3, 2013.  (*See* Mot. Dismiss.)  After receiving two extensions of time (*see* Doc. Nos. 16 & 23), Plaintiff's Response to Defendants' Motion to Dismiss was filed on July 25, 2013 (Doc. No. 32 [Resp. Mot. Dismiss]).  Defendant filed a Reply in Support of its Motion to Dismiss on July 29, 2013.  (Doc. No. 34 [Reply Mot. Dismiss].)

Plaintiff's Motion to Amend was filed on October 7, 2013.  (*See* Mot. Am.)  Defendant's Response in Opposition to Plaintiff's Motion for Leave to Amend Original Complaint was filed on October 17, 2013.  (Resp. Mot. Am., Doc. No. 45.)  "Plaintiff's Response to Defendant's Opposition of Motion for Leave to Amend Original Complaint," which the court construes and hereinafter refers to as Plaintiff's Reply in Support of his Motion to Amend, was filed on November 22, 2013.  (Doc. 47 [Reply Mot. Am.].)

Accordingly, these matters are ripe for the court's review and ruling.

---

[3] Defendant's response to the EEOC's investigation was not submitted by either party.

**LEGAL STANDARDS**

*A.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim upon

which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations

omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that

a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723

(1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not

"supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort*

*Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories

for the plaintiff in the absence of any discussion of those issues").

*B.*     ***Lack of Subject Matter Jurisdiction***

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to

adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the

6

complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

**B.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties

might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).

    "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means

that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of

analysis. First, the court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or

merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a

plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

    Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940.  Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation

omitted).

C.      *Amendment of Pleadings*

        Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so

requires." Fed. R. Civ. P. 15(a).  The grant or denial of an opportunity to amend is within the

discretion of the court, but "outright refusal to grant the leave without any justifying reason

appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and

inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

        The Federal Rules reject the approach that pleading is a game of skill in which one
        misstep by counsel may be decisive to the outcome and accept the principle that the
        purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48 (1957) *abrogated on other grounds by Twombly*, 550 U.S. 544.

        "Refusing leave to amend is generally only justified upon a showing of undue delay, undue

prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357,

1365 (10th Cir. 1993).  Thus, although Rule 15(a) provides that leave to amend shall be given

freely, the court may deny leave to amend where amendment would be futile. *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason. *Id.*; *Watson ex rel. Watson,* 242 F.3d 1237, 1240-41 (10th Cir. 2001).

## ANALYSIS

**A.     *Claim One – Title VII***

Defendant argues that Plaintiff's first claim for relief fails to state a claim under Title VII.[4] (Mot. Dismiss at 4-5.)[5] The court agrees.

Under Title VII, it is unlawful "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII also makes it unlawful for an employer to retaliate against an

_____

[4] Plaintiff's first claim for relief does not explicitly mention Title VII or any of the classes protected by that statute. Instead, Plaintiff alleges in his first claim that he "believes he was discriminated against by Defendant Southwest Memorial Hospital (SWHM) [and] subjected to harassment & retaliation due to his repeated claims of negligence by other employees and a hospital cover-up." (Compl. at 3.) Nevertheless, other portions of his Complaint make clear that Plaintiff is asserting claims for violations of Title VII and the ADA. (*See id.* at 7.) Claim two clearly constitutes Plaintiff's ADA claim, as it alleges that Plaintiff "was discriminated against by Defendant SWMH due to his psychological disability, Post-Traumatic Stress Disorder (PTSD)." (Compl. at 5.) As a consequence, the court deduces, by negative inference, that Plaintiff's first claim constitutes his Title VII claim, and construes this claim accordingly.

[5] Defendant's Motion also argues that Plaintiff failed to timely file suit within 90 days of receiving his right-to-sue notice from the EEOC, as required by both Title VII and the ADA. (Mot. at 3-4.) However, after Plaintiff clarified the date he received his right-to-sue-notice in his Response, Defendant elected to abandon this argument. (Resp. at 1-2; Reply at 1 n.1.) Accordingly, the court does not address this argument.

employee because []he has opposed any practice made an unlawful employment practice by [Title VII]." *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).

A plaintiff may prove a violation of Title VII by either direct evidence of discrimination or retaliation, or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Crow v. ADT Sec. Servs,* 649 F.3d 1189, 1194 (10th Cir. 2011). Direct evidence of discrimination "demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108, 1117 (10th Cir. 2007) (internal quotations and citation omitted). Plaintiff has not alleged any facts demonstrating direct evidence of discrimination. Consequently, the court reviews Plaintiff's Complaint under the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* framework, "the plaintiff must first establish a *prima facie* case of discrimination or retaliation. Then, the defendant may come forward with a legitimate, nondiscriminatory or non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Crowe,* 649 F.3d at 1195.

To state a *prima facie* claim of discrimination under Title VII, a plaintiff must allege facts that plausibly suggest that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack,* 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *EEOC v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007)). To state a *prima facie* claim of Title VII retaliation, the plaintiff must allege facts that plausibly suggest that (1) he engaged in protected

11

opposition to Title VII discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1227 (10th Cir. 2008).

The court finds that Plaintiff's allegations fails to satisfy the first and third prongs of a *prima facie* Title VII discrimination claim. First, Plaintiff does not allege that he was a member of a particular class protected under Title VII. To the contrary, Plaintiff alleges only that he was discriminated against "due to his repeated claims of negligence by other employees and a hospital cover-up." (Compl. at 3.) Title VII does not provide protection from adverse employment action under these circumstances. *See* 42 U.S.C. § 2000e-2 (prohibiting employment discrimination based on an "individual's <u>race, color, religion, sex, or national origin</u>") (emphasis added).

Second, Plaintiff fails to allege facts suggesting that he was fired under circumstances giving rise to an inference of discrimination. Plaintiff alleges that he was "singled out because of his vocal concerns over [the] unacceptable standard of practice of other Emergency Room Employees," while "[o]ther employees did not receive disciplinary action." (Compl. at 4.) However, Plaintiff does not allege facts suggesting that these other employees received more favorable treatment because of their race, color, religion, sex, or national origin. Instead, he asserts only that they received "preferential treatment based on their relationship(s) with supervisors/managers." (*Id.*) Even assuming the truth of these allegations, they fail to raise an inference that Plaintiff was discriminated against in a manner proscribed by Title VII.

The court also finds that Plaintiff fails to state a Title VII retaliation claim. More specifically, Plaintiff's allegations fail on the first prong of a Title VII retaliation inquiry because they fail to establish that Plaintiff was engaged in protected opposition to Title VII discrimination.

"[T]o qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008). The plaintiff does not need to show that his employer actually violated Title VII; instead, he need only "show that he had a reasonable, good faith belief that he was opposing discrimination prohibited by Title VII." *Held v. Ferrellgas, Inc.,* 505 F. App'x 687, 690 (10th Cir. 2012) (citing *Hertz v. Luzenac Am., Inc.,* 370 F.3d 1014, 1015-16 (10th Cir. 2004)).

Here, Plaintiff maintains that Defendant retaliated against him because he repeatedly reported negligent behavior by other employees. (Compl. at 3.) As discussed above, Title VII does not protect individuals engaged in such activity; instead, it protects employees from discrimination based on their race, color, religion, sex, and national origin. Indeed, because Title VII plainly does not protect individuals from being terminated for reporting negligent behavior, Plaintiff did not have a reasonable, good faith belief that he was opposing discrimination prohibited by Title VII.

Accordingly, the court finds that Plaintiff's Title VII claim fails to state a claim for relief. However, where a plaintiff is proceeding *pro se,* dismissal of a claim pursuant to Rule 12(b)(6) is proper "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d

803, 806 (10th Cir. 1999). As such, the court considers whether Plaintiff's proposed Amended

Complaint (Doc. No. 44 [Proposed Am. Compl.]) cures the deficiencies of his original Title VII

claim.

The court finds that it would be futile to grant Plaintiff leave to assert the Title VII claim

included in his proposed Amended Complaint. As a threshold matter, the court notes that

Plaintiff's proposed Amended Complaint only asserts a claim for Title VII retaliation—it no

longer includes a Title VII discrimination claim.[6]

The court Plaintiff's proposed Amended Complaint does not include factual allegations

sufficient to state a Title VII retaliation claim. As with his original Complaint, Plaintiff's proposed

allegations fail to demonstrate that he was fired for engaging in protected opposition of Title VII

discrimination. Instead, Plaintiff's proposed Amended Complaint once again focuses on his

reports of negligent behavior by other SWMH employees. (*See* Proposed Am. Compl. at 2-8.) As

discussed, Title VII prohibits discrimination solely on the basis of race, color, religion, sex, and

national origin. As such, Plaintiff could not have had a reasonable, good faith belief that reporting

negligent conduct by other employees amounted to opposition to Title VII discrimination.

Furthermore, the court finds that it would be futile to allow Plaintiff an additional

opportunity to cure his Title VII claim. The closest Plaintiff has come to stating a claim for relief

---

[6] Even if Plaintiff's proposed Amended Complaint could be construed to assert a Title VII
discrimination claim, it would be futile. As with Plaintiff's Complaint, the proposed Amended
Complaint does not include any allegations establishing that Plaintiff is a member of a class
protected under Title VII. Moreover, although the proposed Amended Complaint includes more
factual detail regarding the other SWMH employees who allegedly were not disciplined or
terminated for conduct similar to that which precipitated Plaintiff's termination (Proposed Am.
Compl. at 2-8), it does not allege any facts raising an inference that this disparate treatment was
due to Plaintiff's membership in a protected class.

under Title VII is in his charge filed with the EEOC.  There, he asserted that "he was involved in an incident with two females where contaminated medicine was given to a patient," but that he "was the only one disciplined."  (Resp. Mot. Am., Ex. B.)  These allegations of favorable treatment for similarly-situated female employees might well be sufficient to give rise to an inference of discrimination.  *See Luster,* 667 F.3d at 1095 (10th Cir. 2011) (citing *PVNF, L.L.C.,* 487 F.3d at 800).

Nevertheless, the court finds that the scant allegations included in the EEOC charge allegations—namely, that Plaintiff was disciplined over the contamination incident—are specious, at best.  Plaintiff has never alleged in this action that he was disciplined or terminated because of the contamination incident.  Instead, Plaintiff has alleged throughout this action that he attempted to bring his concerns over the contamination incident to his superiors' attention, to no avail.  As such, Plaintiff's allegations in this action belies any notion that Plaintiff was disciplined for the contamination incident, while others involved were not, based on his sex or other protected status.

Altogether, the court finds that (1) Plaintiff fails to state a claim for relief under Title VII, (2) Plaintiff's proposed Amended Complaint fails to cure the deficiencies of his original Complaint, and (3) it would be futile to allow Plaintiff an additional opportunity to amend. Therefore, Plaintiff's Title VII claim is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**B.      *Claim Two – ADA***

In its Response to Plaintiff's Motion to Amend, Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to his ADA claim.  (Resp. Mot. Am. at 5-8.)

15

Although Defendant failed to raise this same argument in its Motion to Dismiss—instead, Defendant's Motion to Dismiss argues only that Plaintiff's ADA claim fails to state a claim for relief (Mot. Dismiss at 5-9)—exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the ADA. *Jones v. UPS, Inc.,* 502 F.3d 1176, 1183 (10th Cir. 2007). Because such issues of subject matter jurisdiction may be challenged by a party or raised *sua sponte* at any time in the proceeding, *McAlester v. United Airlines, Inc.,* 851 F.2d 1249, 1252 (10th Cir. 1988), the court considers whether Plaintiff has exhausted administrative remedies with respect to the ADA claims featured in *both* Plaintiff's original Complaint and proposed Amended Complaint.

The first step to exhaustion under the ADA is the filing of a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). *Id.* (citing *Jones v. Runyon,* 91 F.3d 1398, 1399 n.1 (10th Cir. 1996)). Here, there is no dispute that Plaintiff filed a charge of discrimination with the EEOC. (Resp. Mot. Am., Ex. B.) Instead, Defendant challenges whether the charge Plaintiff filed with the EEOC was sufficient to exhaust administrative remedies with respect to Plaintiff's ADA claim.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City and Cnty. of Denver,* 414 F.3d 1266, 1274 (10th Cir. 2005) (citation omitted). Thus, to have exhausted administrative remedies with respect to a particular claim, "[a]n EEOC charge must contain facts that would prompt an investigation into the claim at issue." *Perkins v. Fed. Fruit & Produce Co.,* 945 F. Supp. 2d 1225, 1245 (D. Colo. 2013) (citing *Jones,* 502 F.3d at 1183-86). The court "liberally construe[s] charges filed with the EEOC in

16

determining whether administrative remedies have been exhausted as to a particular claim." *Jones,* 502 F.3d at 1186.

Even liberally construing Plaintiff's charge of discrimination, the court finds Plaintiff has failed to exhaust administrative remedies with respect to his ADA claim.  First, although Plaintiff checked the box for retaliation on his EEOC charge, Plaintiff did not check the box indicating that he was discriminated against based on his disability.  (Resp. Mot. Am, Ex. B.)  "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box."  *Jones,* 502 F.3d at 1186 (citing *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1260 (10th Cir. 1998)).  This presumption "may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim."  *Id.*

Here, the text of Plaintiff's charge does not include the factual basis of Plaintiff's ADA claim.  The charge does not mention Plaintiff's PTSD or any other disability, much less Plaintiff's belief that he was terminated or disciplined due to his PTSD or any other disability.  (*See* Resp. Mot. Am., Ex. B.)  Instead, Plaintiff's charge only asserts facts to support his belief that he was "discriminated against based on retaliation for reporting sex/male discrimination [] in violation of Title VII."[7]  (*Id.*)

_____

[7] The facts supporting Plaintiff's charge of discrimination are as follows:

    a. I was involved in an incident with two females where contaminated medicine was given to a patient. I was the only one disciplined. I reported that I felt this was discriminatory, but no investigation was completed nor any action against the two females.

    b. In addition to the contaminated medicine, I reported that one of the females was displaying an unprofessional attitude and her hostility toward other employees, especially me. Again, no investigation was conducted.

    c. On or about 2/15/12 during my termination meeting, I notified HR of the incident

17

The EEOC intake questionnaire completed by Plaintiff also does not include facts relating to his claim that Defendant discriminated against him in violation of the ADA. (*See* Resp. Mot. Am., Ex. A.) First, Plaintiff specifically checked "no" where the questionnaire asked "Do You Have a Disability?" (*Id.* at 1.) Second, as with his charge of discrimination, Plaintiff failed mark the box indicating that his claim of employment discrimination was based on disability. Third, Plaintiff failed to answer several questions directed specifically to claims of discrimination based on disability. (*Id.* at 2-3.) Fourth, the narrative Plaintiff attached to the questionnaire does not include any facts suggesting that Plaintiff was discriminated against based on his PTSD or any other disability. (*Id.* at 6-7.)

The only time Plaintiff mentioned his PTSD in the EEOC proceedings was in his rebuttal to Defendants' position. (*See* Resp. Mot. Am., Ex. C.) Even then, however, Plaintiff simply noted that he had received treatment for PTSD, that he took FMLA leave as a consequence, and that his supervisor agreed to accommodate his counseling for his PTSD. (*Id.*) Plaintiff did not assert in his rebuttal that he was fired because of his PTSD. (*Id.*)

Plaintiff did not amend his charge, or file a second charge, to include allegations that he was terminated based on his PTSD in violation of the ADA. *See* 29 C.F.R. 1601.12(b) (permitting the charging party to amend the charge to cure defects or omissions, including to clarify or amplify allegations made therein); *Bexley v. Dillon Co., Inc.,* No. 04-cv-01661-MEH- MJW, 2006 WL

---

and other situations regarding other EMT-intermediates within the hospital that have drawn up and administered medications that are outside the scope of their practice. The HR Manager stated that he was unaware of the incidents, but he did not state he would investigate.

650236, at *2 (D. Colo. Mar. 13, 2006) (unpublished) (plaintiff was required to either amend her EEOC charge or file a second charge to exhaust administrative remedies with respect to a previously-undisclosed retaliation claim).  Indeed, in responding to Plaintiff's request to reconsider the dismissal of his charge, the EEOC specifically concluded that Plaintiff did not assert allegations of disability discrimination during the intake process or in drafting the charge, and that Plaintiff never indicated that he "intended to amend [the] charge to include additional allegations of discrimination based upon a violation of the ADA."  (Resp. Mot. Am., Ex. D at 1.)  Plaintiff's argument that he "did not know it was his responsibility to amend" his charge of discrimination is insufficient to excuse his failure to exhaust administrative remedies.  *See Bexley,* 2006 WL 650236, at *2.

Altogether, Plaintiff failed to raise any facts in his charge of discrimination or other documents filed with the EEOC that would have prompted an EEOC investigation into whether he was terminated in violation of the ADA.  As such, the court finds that Plaintiff failed to exhaust administrative remedies with respect to his ADA claim.  Therefore, because the court lacks jurisdiction over Plaintiff's ADA claim, Plaintiff's second claim for relief is dismissed without prejudice and Plaintiff's proposed amended ADA claim is rejected as futile.  *See, e.g., Strozier v. Potter,* 71 F App'x 802, 804 (10th Cir. 2003) (dismissal of claims for lack of subject matter jurisdiction should be without prejudice).

Therefore, for the foregoing reasons, it is

ORDERED that "Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 12) is GRANTED.  Plaintiff's Title VII claim is dismissed with prejudice

19

pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiff's ADA claim is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).  It is further

ORDERED that "Plaintiff's Motion for Leave to Amend Original Complaint" (Doc. No. 42) is DENIED.  It is further

ORDERED that "Plaintiff's Motion to Compel" (Doc. No. 48), "Plaintiff's Motion for Extension of Time" (Doc. No. 50) and Plaintiff's "Second Request Motion to Request the Court to Appoint Pro Se Plaintiff Legal Counsel Respresentation [sic] According to the Pilot Program, Pro Bono Panel" (Doc. No. 51) are DENIED as moot.  It is further

ORDERED that this case is DISMISSED in its entirety.

Dated this 17th day of March, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge